**In the Matter of Albert E. ALLARD, Debtor.**

**Bankruptcy No. 81–04714–G.**

United States Bankruptcy Court, E. D. Michigan, S. D.

June 14, 1982.

---

Lawrence K. Snider, Detroit, Mich., for Paul Borock Trustee.

## MEMORANDUM OPINION AND ORDER

RAY REYNOLDS GRAVES, Bankruptcy Judge.

The question presented by this cause is whether the Court may appoint counsel to represent the Trustee, over the Trustee's objections when unusual and compelling circumstances exist which indicate a necessity for the Court to appoint counsel.

This Court finds that it does possess the authority to appoint counsel to represent the Trustee, over the Trustee's objections, when unusual and compelling circumstances exist indicating a grave necessity for such appointment.

This cause comes before the Court on the Trustee's Motion for Reconsideration of Order Authorizing Trustee to Retain Counsel and Other Relief. The facts giving rise to this cause are as follows.

In the early part of April, 1982, this Court received ninety-nine (99) separate petitions by four Trustees for authority to retain counsel. Each of these petitioners sought to retain either John C. Dougherty of John C. Dougherty, P.C., or his associate, Kenneth Schneider, as counsel. Of these ninety-nine (99) cases, Mr. Dougherty himself served as Trustee in eighteen (18) of them.

On April 16, 1982, all ninety-nine (99) petitions were denied, and ten (10) attorneys of the Court's choice were appointed to represent the petitioning Trustees. The Court advised Mr. David R. Sherwood, Clerk of the United States Bankruptcy Court for the Eastern District of Michigan, of the reasons for the Court's action in a written memorandum on April 19, 1982. [See appendix]

The Trustee herein, Paul Borock, was appointed Trustee of the estate of Albert E. Allard, Debtor herein. Borock is also the Trustee in thirteen (13) other cases before this Court. Thus, in fourteen (14) cases Borock sought to retain the law firm of John C. Dougherty, P.C., as counsel; specifically, Borock sought to retain Kenneth Schneider of Dougherty's office.

On May 4, 1982, Paul Borock filed his Motion for Reconsideration of the Order Authorizing Trustee to Retain Counsel. This motion was brought on oral argument on May 28, 1982.

Counsel for the Trustee at bar argues that this Court possesses no power to direct the Trustee to employ counsel of the Court's choice rather than the Trustee's choice. It is further argued that the Court acted in a procedurally improper fashion by denying the Trustee's petitions on an *ex*

*parte* basis.[1] It is this issue that we first address.

■ At the May 28 hearing on the Trustee's Motion for Reconsideration, counsel for the Trustee on several occasions initially declined to address the issue of why it was imperative that the Trustee retain the law firm of John C. Dougherty, P.C. Additionally, counsel also refused to put Borock on the witness stand to testify as to his reasons for wishing to employ attorney Schneider. When counsel finally agreed to have Borock take the stand, the latter testified under oath that it was John C. Dougherty who Borock wanted to retain, although all fourteen (14) of Borock's petitions recited that it was Kenneth Schneider who would be retained. It was also conceded by counsel for the Trustee that no Sixth Circuit opinion exists concerning this issue. Full opportunity at this hearing was present for the Trustee to represent his reasons for wishing to employ either Dougherty or Schneider. Such representations were made. Thus, any procedural defect that may have existed was in fact sufficiently remedied.

Under examination by the Court, Borock testified that he desired counsel for the purpose of collecting income tax refunds on behalf of the debtors. He advised the Court that a lawyer with experience in tax litigation was "not necessarily" helpful to this process. The Court called Linda G. Carr, Esq., one of the Court's appointed counsel, to testify concerning her qualifications. Ms. Carr advised the Court that she was a member of the Bar of the State of Michigan and had prior experience as a tax attorney for the Detroit office of the Internal Revenue Service. Counsel for Borock declined to ask any questions concerning Ms. Carr's qualifications. Counsel also declined to call John C. Dougherty as a witness to place on the record his qualifications so that a comparison could be made.

■ As to the question of the Court's power to disapprove the Trustee's choice of counsel and to direct the Trustee to employ counsel of the Court's choosing, Section 327(a) of the Code, 11 U.S.C. § 327(a), provides that "the trustee, with the Court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons ...." Rule 215(a) of the Bankruptcy Rules of Procedure similarly provides:

> No attorney ... for the trustee or receiver shall be employed *except upon order of the court.* The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney ..., the reasons for his selection, the professional services he is to render, and to the best of the applicant's knowledge all of the attorney's ... connections with the bankrupt, the creditors, or any other party in interest, and their respective attorneys .... If the attorney ... represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, *and his employment is in the best interest of the estate,* the court may authorize his employment. (Emphasis supplied).

The main objective of this statute and rule apparently is to afford the Trustee his privilege of choice of counsel when situations so warrant, and at the same time to ensure the efficient and effective administration of the estate by empowering the Court to disapprove the Trustee's choice of counsel when certain facts exist.

Approval by the Court is the product of reflection, analysis, scrutiny, and decision, requiring the Court to bring to the process of judgment reason, experience, and common sense. When the Court encounters circumstances that raise the prospect of injury to the efficient and fair administration of justice, the Court must act, even if such action may seem to be outside of the ordinary routine of blind approval of proposed orders for appointment of counsel. The appearance of a "closed shop" of practitioners before the United States Bankruptcy Court for the Eastern District of Michigan brings the Bar, this Court, and the administration of justice into disrepute. This appearance of a "closed shop", if sanctioned by the Court's approval, weakens respect for the Bench.

It has been said that a Trustee should, in most circumstances, be afforded the privilege of choosing his own counsel. "Only in the rarest cases should the trustee be de-

---

1. It was suggested in oral argument that the Court should conduct hearings on the applications for appointment of Trustee. The docket congestion in conducting one hundred (100) hearings would so impede the process of reform as to make undue delay the cost for improving the quality of justice.

prived of the privilege of selecting his own counsel . . . ." *In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934). In the same breath, however, that Court unequivocally stated that a Court may appoint counsel over a Trustee's objections when the interests of the estate will be promoted thereby. "[R]easons which make it for the best interest of the estate to have the court select the attorney over the trustee's objection should appear in the record." *Id.* The principle that the Court may appoint counsel to represent a Trustee has thus been enunciated, and has also been repeatedly supported.

■ In *Kanter v. Robertson*, 102 F.2d 92, 93 (4th Cir. 1939), the Court stated that "[O]rdinarily the trustee should be allowed to select his attorney" due to the highly confidential nature of the attorney-client relationship, but went on to quote *In re Mandell, supra* : " 'Only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel, and reasons which make it for the best interest of the estate to have the court select the attorney over the trustee's objection should appear in the record.' " *Id.* quoting *In re Mandell*, 69 F.2d at 831. *See also, In re Christ's Church of the Golden Rule*, 157 F.2d 910 (9th Cir. 1946). Hence, the foregoing case authority, along with § 105 of the Code, 11 U.S.C. § 105, undoubtedly vests this Court with the power to appoint counsel over the Trustee's objections. Before we may exercise this power, however, "reasons which make it for the best interest of the estate" must exist.

Throughout the entire time that the Bankruptcy Reform Act of 1978 was being debated and drafted, Congress was concerned with a phenomenon known as the "bankruptcy ring." Basically, this was a pre-Reform Act situation where the creditors could select a Trustee who, in turn, would select a counsel favorable to both the Trustee and creditors. "[W]here creditors do vote for a trustee, it is frequently only because law firms solicit such votes as a means of obtaining the business which will be supplied by this trustee." *Report of the Commission on the Bankruptcy Laws of the United States* (July 1973) *as reported in* Appendix 2 *Collier on Bankruptcy* 4 (15th ed.). "Persons practicing in the bankruptcy field tended to confine their activities exclusively to that area . . . . Therefore, a relatively small group of lawyers controlled the bankruptcy field. Those not within this group tended to regard them with suspicion and distrust." *Id.* at 93. "The creditors' attorneys exact their influence to elect friendly trustees or committees in order to pluck the plum of counsel to the trustee or counsel for the committee . . . . This creates the so-called bankruptcy ring with all the implications that might fall from that connotation." H.R. Debates (Oct. 27, 1977) *as reported in* Appendix 3 *Collier on Bankruptcy* IV-18 (15th ed.).

■ At bar, we have attempted to carry out Congress' intent; a closed bankruptcy bar is anathema to the spirit of reform. If the Bar, bankruptcy practitioners, or the present panel of Trustees are unable or unwilling to promote the administration of justice by carrying forward reforms designed to promote the best interests of the administration of justice, this Court will not hesitate to lead. Appointing a law firm to represent the Trustee in a high volume of cases fosters a closed bankruptcy bar. Moreover, when a single law firm acquires a firm grasp on the Court's docket, this results in control which no Court would tolerate. Thus, in examining the record it cannot be gainsaid that rare and unusual circumstances exist which necessitate the denial of Trustee Borock's choice of counsel.

Therefore, the Trustee's Motion for Reconsideration of Order Authorizing Trustee to Retain Counsel is denied.

It is so ordered.

## APPENDIX

### MEMORANDUM

TO: MR. DAVID R. SHERWOOD AND MR. DOUG ROBERTS

FROM: JUDGE RAY REYNOLDS GRAVES

RE: TRUSTEE SELECTIONS OF ATTORNEYS

DATE: APRIL 19, 1982

------------------------------------------------

On April 12, 1982, I received ninety-nine separate petitions by 4 trustees to retain counsel. If each of these ninety-nine separate petitions to retain counsel were approved according to the Orders presented all of these cases would be assigned to the law offices of John C. Dougherty, P.C., either to Mr. Dougherty, or his associate Kenneth Schneider. The requests were made as follows:

1. Dougherty, as trustee, petitions for authority to hire himself as the attorney for the trustee - - - 18 cases.

2. Borock, trustee, petitions for authority to hire Schneider as attorney - - - 16 cases.

3. Bonds, trustee, petitions for authority to hire Schneider as attorney - - - 31 cases.

4. Shaheen, trustee, petitions for authority to hire Schneider as attorney - - - 34 cases.

TOTAL - - - 99 cases assigned to the law offices of John C. Dougherty

I have not approved any of these requests. I have prepared orders of appointment in each of these ninety-nine cases distributing them among 10 law firms or sole practitioners. No one firm or sole practitioner received more than 10 cases under my distribution. None of the lawyers selected have had the opportunity to practice before this court, although I know each of them to be qualified and eager to develop experience in Bankruptcy Court.

This action is taken in order to open up the court to the general bar and eliminate even the appearance of a "closed shop."

RRG/ymj